## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

BRANDON MICHAEL GILCHER

                Plaintiff,

vs.                                 CASE NO: 2:10-cv-92-FtM-36SPC

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

_____

## <u>ORDER</u>[1]

    This matter comes before the Court on the Plaintiff, Brandon Michael Gilcher's, Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. # 1) filed on February 11, 2010, in the Middle District of Florida, Fort Myers Division.  The Plaintiff filed her Memorandum of Law in Support of the Complaint (Doc. #15) on July 12, 2010.  The Commissioner filed the Memorandum of Law in Support of the Commissioner's Decision (Doc. #17) on September 9, 2010.  Thus, the Motion is now ripe for review.

    The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

_____

[1]This Order addresses only the issues brought up for review by the District Court pursuant to 42 U.S.C. § 405(g).

## FACTS

### *Procedural History*

The Plaintiff previously filed an application for a period of disability and disability insurance benefits on February 26, 2007, alleging the onset of disability to be August 1, 2007. (Tr. 15, 108–13).   The claim was denied initially on July 20, 2007, (Tr. 87–88) and upon reconsideration on October 26, 2007.  (Tr. 94–98).   On August 5, 2008, a hearing was held in West Palm Beach, Florida.   The Plaintiff appeared before Administrative Law Judge (ALJ) Ruben Rivera, Jr.  (Tr. 23).   On October 20, 2008, the ALJ issued an unfavorable decision.  (Tr. 12–22).   The Plaintiff filed a timely appeal of the denial to the Appeals Counsel.  The Appeals Council denied Plaintiff's request for review on May 1, 2009.  (Tr. 6–8).   The Plaintiff has exhausted his administrative remedies, and this case is ripe for review under 42 U.S.C. § 405(g).

### *Plaintiff's History*

The Plaintiff was born on October 10, 1981, and was twenty-seven (27) years of age at the time of the Commissioner's decision on October 20, 2008. (Tr. 111).  The Plaintiff has a high school education.   (Tr. 126, 128–30).   The Plaintiff has relevant past work experience as a waiter.  (Tr. 129).  The Plaintiff alleges an inability to work due to a brain injury as a result of being thrown from a moving vehicle, memory loss, post traumatic stress disorder, panic attacks, scrambled thought, and anger.  (Tr. 128).

### *Medical History*

On July 22, 2004, Plaintiff presented to Dr. David P. Sachs for a neurological evaluation, upon referral from Delray Medical Center. (Tr. 238).He had a chief complaint of a head injury, as a result of being thrown out of a car. The doctor noted that Plaintiff appeared confused, and was oriented to person only. (Tr.238–39).   CT scans revealed bi-frontal contusions and occipital

skull fracture.  (Tr. 239, 245).  Plaintiff then saw Dr. Ettedgui[2] on July 28, 2004, in follow-up. The doctor spoke to Plaintiff's wife, who expressed concern as to his significant cognitive worsening impairment and her great concern in taking him home.  (Tr. 331–33).

On September 1, 2004, Plaintiff had a follow-up examination with Dr. Sachs.  The doctor reviewed the CT scan of Plaintiff's brain from July 27, 2004, which revealed that his contusions were resolving and there were no new problems.  Plaintiff stated that his memory was improving and he wanted to return to work. (Tr.236, 346).The doctor released him back to work as a waiter. (Tr.236–37).

On October 19, 2004, Plaintiff again had a follow-up examination with Dr. Sachs. He reported that he had returned to work as a waiter and intended to begin college.  The doctor reviewed a CT scan taken on October 12, 2004, which revealed resolution of the bifrontal contusions and revealed some bilateral encephalomalacias.  (Tr. 242)  The doctor recommended that Plaintiff get a neuropsychological evaluation, an ophthalmology evaluation and a driving evaluation before releasing him to work. (Tr.234, 342).

On December 28, 2004, Dr. David Guttman, M.D., prepared a Medical Summary Sheet reflecting that though Plaintiff's impairment was severe, it did not last 12 months, and there were no functional limitations. (Tr. 348).

On October 7, 2005, Plaintiff presented to Delray Medical Center with a gunshot woundin his left leg. Plaintiff had surgery to repair the superficial femoral artery.  The doctor also noted that there was extensive damage to the muscle in the mid-thigh.(Tr. 249).

---

[2]Plaintiff's memo mistakenly states follow-up on July 28, 2004 was with Dr. Sachs, but was with Dr. Daniel Ettedgui.  This harmless error had no affect on the credibility of the July 28, 2010, report, nor would it have affected any of the ALJ's findings resulting from the report.

On April 4, 2007, Plaintiff presented to Dr. Martin D. Segel, Ph.D., at the request of the Commissioner, for a psychological evaluation. (Tr. 262). Plaintiff told the doctor that he attended the Florida Institute of Neurologic Rehabilitation after his hospitalization in August, 2004. His grandmother, Ms. Vitali, reported that he did not complete his brain rehabilitation due to the hurricane. (Tr. 263).He reported sleep difficulties, anhedonia, feelings of worthlessness, fatigue, concentration difficulties, and indecisiveness. He had also lost forty-five pounds over the past five to six months. He had psychomotor slowing, increased crying and irritability. (Tr. 264).He reported having panic attacks, including heart palpitations, sweating, shaking, shortness of breath and hot flashes.  (Tr. 264).   Upon behavioral observations and mental status examination, he appeared alert and oriented to person, place, time and situation. Attention and concentration for an auditorally presented task were intact.  Remote recall was found to be fair. (Tr. 264).His immediate recall was fair and his recent recall was intact. He denied suicidal and homicidal ideation. (Tr. 265) The results of the WAIS-III were verbal IQ of 102, a performance IQ of 105 and a full scale IQ of 103. The doctor found that his IQ was in the "average" range. (Tr. 265–66).The doctor found that given the weakness in Plaintiff's verbal recall, he warrants a diagnosis of cognitive disorder, nos. (Tr. 267) Also, results from the personality evaluation were indicative of a mixed personality disorder, with avoidant, negativistic, antisocial, and borderline features. (Tr. 268–69).The doctor also diagnosed him with moderate major depressive disorder, single episode, an anxiety disorder, nos, cannabis abuse and alcohol abuse, in sustained partial remission. (Tr. 269).The doctor made a finding that given Plaintiff's cognitive difficulties, he would require additional support when provided with verbal information or instructions in order to improve recall and completion of tasks. He should not be exposed to certain substances, due to his history of substance abuse. He also may exhibit difficulty relating appropriately with

coworkers or supervisors, given his personality traits and anxiety/mood-related issues. (Tr. 270).The doctor diagnosed Plaintiff with moderatemajor depressive disorder, single episode, anxiety disorder, nos, cognitive disorder, nos (verbal memory), alcohol abuse, sustained partial remission, cannabis abuse. The doctor also diagnosed him with mixed personality disorder, with avoidant, antisocial, negativistic, and borderline features. The doctor assigned him a GAF of 50. (Tr. 270).

On July 11, 2007, Plaintiff presented to Dr. Mark J. Rogovin, for a Disability Evaluation, at the request of the Commissioner. The doctor noted that Plaintiff was a "fairly good historian, but occasionally forgetful." He was accompanied to the evaluation with a person from the Brain Injury Association of Florida, to elaborate. (Tr. 286).Plaintiff related being injured in 2003, when he was struck in the head with a gun and thrown from a moving car. He had to be reminded that he was thrown from the vehicle. As a result of his injury, he was in a coma for a week and has since had memory problems and became confused.  He had an incident in which he handed out money and has not worked since. (Tr. 286).The doctor performed a physical examination, which was essentially normal. He recommended that Plaintiff undergo neurological follow-up and appropriate testing, including an EEG to rule out seizure activity and to make sure he was okay to drive, swim unattended, climb heights, operate machinery and pursue employment.  There was also a question as to hypoglycemia. (Tr. 287).

On October 9, 2007, Plaintiff presented to the Urgi Med Walk-In Medical Center, with complaints of waking up having a panic attack. He was diagnosed with anxiety and prescribed Xanax. (Tr. 325).He returned to the Center on November 1 and 27, 2007, for refills. (Tr. 323–24).

On October 15, 2007, Plaintiff underwent an outpatient assessment at South County Mental Health Center (Hereinafter, South County). He was referred to South County by Brain Injury Association. (Tr. 362). He reported that after the incident in July of 2004, when he was hit in the head with a gun and thrown out of a moving vehicle, he had been experiencing memory loss, panic attacks, vivid nightmares and problems sleeping.(Tr. 362).

On October 25, 2007, Kevin Ragsdale, Ph.D., a non-examining physician employed by the state agency, completed a Mental Residual Functional Capacity Assessment. (Tr. 305–08). The doctor found that Plaintiff's ability to understand and remember detailed instructions were moderately limited. He also found that his ability to carry out detailed instructions and maintain attention and concentration for extended periods were also moderately limited. (Tr. 305).His ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods was moderately limited as well as his ability to accept instructions and respond appropriately to criticism from supervisors and his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. The doctor further found that he would be moderately limited in his ability to respond to changes in his work setting. (Tr. 306).

Dr. Ragsdale went on to complete a Psychiatric Review Technique on October 25, 2007. The doctor made a findings that Plaintiff suffered from an organic mental disorder, a cognitive disorder, nos status post his accident. (Tr. 310).The doctor also found he had moderate major depressive disorder (Tr. 312) and an anxiety disorder, nos.(Tr. 314).The doctor found that these disorders would cause a mild limitation in the area of restriction of daily living. However, the doctor found that Plaintiff would have moderate limitations in the areas of difficulties in maintaining social functioning and in maintaining concentration, persistence and pace. (Tr. 319).

On October 29, 2007, Plaintiff underwent an intake and evaluation with South County. He was advised by a nurse practitioner to seek voluntary admission due to panic attacks, depression and anxiety. He reported that he lived in a half-way house and needed to undergo detoxification due to drinking alcohol.  (Tr. 352).  A psychiatric evaluation was performed of Plaintiff. His chief complaint was that he had panic attacks and "forgot how to be normal." (Tr. 354).He reported that along with the panic attacks, he had not been sleeping well.(Tr. 354). Upon mental status examination, his mood was found to be labile, affect congruent with mood. His gross cognitive function was found to be impaired. He was unable to do one out of three words after one minute. His insight and judgment was found to be fair.  (Tr. 354).  The doctor diagnosed him with recurring major depression, and ruled out substance induced mood disorder. His GAF was found to be 50. The examiner recommended that he be admitted and start medication, Depakote and Wellbutrin. (Tr. 355).On the same date, Plaintiff was interviewed by Dorothy Simnett, who found that Plaintiff had rational and organized thoughts, some insight, and was alert, cooperative and pleasant. (Tr. 358).He did become irritated when he learned the intake assessment was not for detox. (Tr. 358).  Ms. Simnett believed Plaintiff to be suffering from dual diagnosis: panic disorder and anxiety, depression and substance abuse.  (Tr. 358).  Ms. Simnett diagnosed him with posttraumatic stress disorder, depressive disorder, nos, and generalized anxiety disorder. She assigned him a GAF of 38.(Tr. 360).

On February 4, 2008, Plaintiff presented to South County for medication management. Plaintiff reported being drug free for three weeks. He also told the doctor that he required medications to maintain stability. His insight and judgment were found to be impaired. He was diagnosed with major depressive disorder, recurrent and polysubstance abuse.  He was assigned a GAF of 50.  He was prescribed Wellbutrin.(Tr. 349).

On August 5, 2008, Plaintiff appeared and testified at his hearing along with his grandmother, Barbara Vitale. (Tr. 23).At the hearing, Plaintiff, through counsel, amended his onset date to August 1, 2007. (Tr.25). Plaintiff testified that he has not been able to maintain employment for more than a couple of weeks.(Tr. 31). He testified that he had difficulty remembering to go to work. He gets "flustered" if he is given too much to do at one time. He had problems at CVS Pharmacy because he had difficulty staying on task to his assigned duty.(Tr. 32). At another job, he did not remember the correct work schedule and wrote it down wrong and missed his assigned days to work and was let go. He also had difficulty dealing with crowds of people. He testified that he took Lexapro for his depression. (Tr. 33). He also had problems with anxiety. He had difficulty with concentration; he would read a couple of pages and not recall what he had read. He would also "space out". (Tr. 34). He testified that he had stopped drinking alcohol three or four months prior to the hearing. (Tr. 35). He testified that his hospitalization in July of 2008, was due to forgetting that he had taken his medication and taking too many Oxycodone and Xanax.(Tr. 37). He testified that his grandmother reminds him of his appointments. They speak over the phone four to five times a day. (Tr. 40). He received case management from the Brain Injury Association. (Tr.42). His case worker would encourage him and helped him apply for Health Care District insurance, because he was overwhelmed by the paperwork. (Tr. 42–43). Plaintiff testified that he uses public transportation and does not drive. (Tr. 51). Ms. Vitale testified that her grandson had panic attacks and would call her crying and she would have to talk him through those periods. (Tr. 53).

### *Administrative Law Judge's Decision*

Upon consideration of the record, the ALJ found that Plaintiff met the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section

216(I) of the Social Security Act and was insured for benefits only through December 21, 2011.(Tr. 17).  The ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability of August 1, 2007.  (Tr. 17).   The ALJ found the Plaintiff has the following severe impairment: history of brain contusions, now resolved.(20 CFR 404.1520(c) and 416.920(c)).(Tr. 17).  However, the ALJ found that the Plaintiff does not have an impairment or combinations of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  (Tr. 18).  The ALJ, after careful consideration of the record, found the Plaintiff has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416. 967(c).(Tr. 18).  Further, the Plaintiff is capable of performing his past relevant work as a waiter.  (Tr. 21).  The work does not require the performance of work-related activities precluded by the Plaintiff residual functional capacity. (Tr. 21).  The ALJ found the Plaintiff has not been under a disability, as defined in the Social Security Act, from October 1, 2006, through the date of this decision. (20 CFR 404.1520(f) and 416.920(f)).(Tr. 21).

## **THE STANDARD OF REVIEW**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence.Hibbard v. Commissioner, 2007 WL 4365647 at *2 (M.D. Fla. December 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)).  In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[3]20 C.F.R. §§ 404.1520(a), 404.920(a).

---

[3]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability.  The steps are as follows:

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion."  Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838–39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F. 3d 1232, 1240 n.8 (11th Cir. 2004).  The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]."  Phillips, 357 F. 3d at 1240 n.8; Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005).  If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1439 (11th Cir. 1997).

---

*Step 1.*  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.

*Step 2.*  Does the claimant suffer from a severe impairment?  If not, then the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.

*Step 3.*  Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, then the claimant is disabled.  If not, the next question must be resolved.

*Step 4.*  Can the claimant perform his or her former work?  If the claimant can perform his or her past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.

*Step 5.*  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.  See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the case.  42 U.S.C. § 405(g)(sentence four).  The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  Williams v. Commissioner, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).

## DISCUSSION

The Plaintiff states the case should be remanded to the Commissioner due to the following errors: (1) the ALJ improperly rejected Plaintiff's anxiety, depression, and traumatic brain injury as severe impairments, and (2) the ALJ improperly discounted Plaintiff's testimony regarding his subjective complaints.  The Government argues the ALJ's decision was based upon substantial evidence and should be affirmed.

### (1) Whether the ALJ Erred in Failing to Find the Plaintiff's Mental Impairments "Severe"

The Plaintiff argues the ALJ failed to find that Plaintiff's anxiety, depression, and traumatic brain injury were severe mental impairments.  The Commissioner argues that contrary to Plaintiff's contentions, substantial evidence supports the ALJ's finding that he did not have a severe mental impairment.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result indeath, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial

gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§404.1505 - 404.1511. To determine whether the claimant is disabled, the ALJ is required to evaluate the claim according to the established five-step evaluation process. See supra footnote 3.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe."An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c).Basic work activities include, for example, (1) physical functions such as walking and standing; (2) capacities for seeing, hearing, and speaking; (3) understanding, following, and remembering simple instructions; (4) using judgment; (5) responding appropriately to supervision, co-workers, and normal work situations; and (6) dealing with changes in the work setting. 20 C.F.R. § 404.1521(b)."An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, regardless of age, education, or work experience." Bridges v. Bowen, 815 F.2d 622,625 (11th Cir. 1987).

At step two of the sequential evaluation process, the ALJ found that the Plaintiff had the following severe impairment: history of brain contusions, now resolved. (Tr. 17).The ALJ stated that the Plaintiff's medically determinable[1] mental impairments of major depressive disorder, polysubstance abuse, and traumatic brain injury "do not cause more than minimal limitation in the claimant's ability to perform mental work activities and is therefore non-severe. (Tr. 18). In coming to this conclusion, the ALJ considered the effect of the above mental impairments on

---

[1] Diagnosis of a condition does not proved that the condition affected the claimant's ability to perform basic work activities. Moore v. Barnhart, 405 F.3d 1208, 1213 n.3 (11th Cir. 2005); see alsoGross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss.").

four broad functional areas, also known as "paragraph B" criteria, set out in the regulations for evaluating mental disorders. 20 C.F.R. Pt. 404, Subpart P, App. 1.

Evaluating the mental impairments in each of four functional areas will reveal the extent to which the impairments interfere with the claimant's ability to function "independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. § 404.1520a(c)(2). The four broad functional areas are: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(4). When rating the degree of limitation in the first three categories, the ALJ will use a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). When rating the degree of limitation in the fourth category, the ALJ will use a four-point scale: none, one or two, three, and four or more. 20 C.F.R. § 404.1520a(c)(4). If the limitation in the first three function areas rates at "none" or "mild," and the fourth area rates at a "none," then the ALJ will generally conclude that the claimants impairments are not severe, unless "the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

The ALJ found the Plaintiff suffered from mild limitation to "activities of daily living," mild limitation to "social functioning," mild limitation to "concentration, persistence or pace," and no episodes of decompensation. (Tr. 18).A Psychiatric Review Technique filled out on June 6, 2007, relying on Plaintiff's psychological evaluation on April 4, 2007, indicated identical functional limitations as the ALJ. (Tr. 282, 284). Another Psychiatric Review Technique, filled out by Dr. Ragsdale, came to similar conclusions—although "social functioning" and "concentration, persistence or pace" were marked as moderate—indicating the Plaintiff retains social and cognitive skills essential to completing simple, routine tasks.(Tr. 319). Dr. Ragsdale

also noted that "a fair portion of the functional restrictions are also attributed to the coexisting physical complaints."[2](Tr. 321).

The ALJ determined the Plaintiff's mental impairments cause a mild limitation to activities of daily living. For this conclusion, the ALJ specifically relied upon the Plaintiff's own Function Report. (Tr. 139–47). The Plaintiff lives by himself and has no problems with personal care. (Tr. 140). He is able to prepare his own meals daily, and completes household chores, such as cleaning and laundry, weekly without the need for encouragement. (Tr. 141). The Plaintiff leaves his home daily and is also able to independently run errands, such as getting groceries regularly. (Tr. 142). Plaintiff does have some issues with paying his bills, and handling a bank account. (Tr. 142). Substantial evidence supports that the Plaintiff's mental impairments cause mild limitations to activities of daily living.

The ALJ determined the Plaintiff's mental impairments cause mild limitations to his social functioning ability. The ALJ, again, specifically relied on the Plaintiff's own Function Report for limitations to his social functioning. The Plaintiff indicated he still spends time with others. (Tr. 143). Specifically, he stated that, about four times per week, he plays cards and watches television with others. (Tr. 143). He will also go to the beach, and sees his son whenever he can. (Tr. 143).He does not like to go out, however, because he does not like crowds.(Tr. 144). Plaintiff also indicated he does not trust people and is sometimes very fearful. Substantial evidence supports that the Plaintiff's mental impairments cause mild limitations to his social functioning.

---

[2] When evaluating the severity issue of the mental impairments, it is important to note that Dr. Ragsdale stated Plaintiff's mood and behavioral instability is "being complicated by [the gunshot wound] to [the] leg in 2005." (Tr. 307). He continued to say the gunshot wound was "contributing to variable concentration, persistence, and pace and social dysfunction." (Tr. 307).

The ALJ's findings regarding Plaintiff's social functioning are further supported by Dr. Ragsdale's Mental Residual Functional Capacity Assessment performed on October 25, 2007. (Tr. 305–07); (Exhibit 8F).The Plaintiff has no significant limitation to the ability to interact appropriately with the general public.  (Tr. 306).  He has the ability to ask simple questions or request assistance on a task.  (Tr. 306, 308).  He also has the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  There were indications that the Plaintiff "may perhaps occasionally exhibit emotional and/or behavioral extremes with others during periods of high stress."  (Tr. 307).

In the third functional area, the ALJ determined the Plaintiff's mental impairments cause mild limitations to his ability to maintain concentration, persistence, or pace.  Although the Plaintiff complained of problems with memory, the ALJ relied upon the objective data in Dr. Rottblatt's Psychological Evaluation. (Tr. 262–71); (Exhibit 3F).The Plaintiff exhibited average scores in his attention and concentration skills.  He had a Working Memory Index Standard Score in the "Average" range of functioning.  (Tr. 266).  His ability to rapidly and accurately process visual symbols within specific time constraints was also "Average."[3]  The Plaintiff has "Normal" psychomotor processing speed and visual attention while completing visual tasks.

Dr. Rottblatt also tested the Plaintiff's memory skills, testing immediate and delayed verbal recall, as well as immediate and delayed visual recall.  (Tr. 267).Plaintiff tested in the "Low Average" range for immediate verbal recall, and in "Borderline Impaired" range for delayed verbal recall.  (Tr. 267).  These results warranted a diagnosis of Cognitive Disorder, NOS.[4]  Plaintiff was evaluated to have "average" immediate and delayed visual recall.  In light

---

[3] "The subtests that comprise this scale require a high degree of visual attention as well as psychomotor processing speed." (Tr. 266).
[4] With all the results considered together, including the cognitive disorder diagnosis, the Plaintiff was still found to only have mild limitations to his concentration, persistence, or pace.  (Tr. 282).

of the above findings by Dr. Rottblatt,[5] there is substantial evidence to support the ALJ's finding that the Plaintiff's mental impairments cause mild limitations to his ability to maintain concentration, persistence, or pace.

In the final functional area, the ALJ found the Plaintiff did not experience episodes of decompensation.   The medical evidence substantially supports the ALJ's findings of zero episodes of decompensation.  (Tr. 282, 319).

With the findings above, the ALJ will generally find impairments were not severe, unless "the evidence otherwise indicates that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities."  20 C.F.R. § 404.1520a.  The ALJ found the Plaintiff is "able to perform [past relevant work] as actually and generally performed.   This finding is also supported by substantial evidence.

The Plaintiff was able to work after the head injury which is said to have caused the mental impairments.  The ALJ found that the head injury happened in 2004 and that the Plaintiff was cleared to work that same year.  (Tr. 19).  The Plaintiff continued to work from 2004 through 2006 at the "Substantial Gainful Activity" (SGA) level.  (Tr. 19, 115).  The ALJ concluded that nothing prevented the Plaintiff from working prior to the onset date, and that there is "no evidence to suggest that [an impairment] would prevent him from working after his alleged onset date."

To support his finding above, the ALJ relied on many, if not all, of the medical opinions in the record.  First, Dr. Rottblatt concluded that the Plaintiff should be capable of performing "technical vocational tasks that require academic achievement to learn."  (Tr. 271).  In addition, the ALJ relied on Dr. Rogovin, who concluded the Plaintiff did not allege any physical

---

[5] The reports completed by Dr. Ragsdale, a non-examining physician, also provide substantial evidence supporting the ALJ's decision.  (Tr. 305–321).

limitations and that his findings on examination were entirely normal.  (Tr. 286–88).  Finally, the ALJ gave great weight to the Physical Residual Functional Capacity Assessment by the state agency medical consultant, which concluded the Plaintiff is physically capable of doing work. (Tr. 297–303).

To make his findings, the ALJ considered the Plaintiff's medically determinable mental impairments of major depressive disorder, polysubstance abuse, and traumatic brain injury.  The ALJ found that the mental impairments "do not cause more than minimal limitations in the claimant's ability to perform basic mental work activities and is therefore nonsevere."  (Tr. 18).Further, there is no evidence that otherwise indicates that there is more than a minimal limitation in the Plaintiff's ability to do basic work activities.   This Court finds there is substantial evidence in the record to support the ALJ's finding at Step 2.

### (2) Whether the ALJ Improperly Discounted Plaintiff's Testimony Regarding Subjective Complaints

The claimant bears the burden of proving he was disabled within the meaning of the Social Security Act.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  When a claimant attempts to establish disability based on his subjective complaints, the claimant must satisfy the Holt Pain Standard.   Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); 20 C.F.R. § 404.1529.  In this three-part test, the claimant must show: "(1) evidence of an underlying medical condition and (2) either (a) objective medical evidence confirming the severity of the alleged pain [or other symptoms]; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain [or other symptoms]."  Holt, 921 F.2d at 1223.

Once the claimant establishes an underlying physical or mental impairment could be expected to produce the claimant's pain or other symptoms, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995); S.S.R. 96-7p.When evaluating intensity, persistence, and limiting effects of the symptoms:

> Statements about [claimant's] pain or other symptoms will not alone establish that [the claimant is] disabled; there must be medical signs and laboratory findings which show that [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that [the claimant is] disabled.

20 C.F.R. § 404.1529(a).The ALJ is to consider "all available evidence, including objective medical evidence, such as medical signs and laboratory findings, statements of the claimant and others about the claimant's symptoms, the medical opinions of treating physicians and non treating physicians, and evidence of how the pain affects the claimant's daily activities and ability to work."  May v. Comm'r of Soc. Sec. Admin., 226 Fed.Appx.955, 958–59 (11th Cir. 2007); 20 C.F.R. § 404.1529(a).

When Plaintiff filed his application, he indicated that he was unable to work due to brain injury, memory loss, post traumatic stress syndrome, panic attacks, scrambled thoughts, and anger.  (Exhibits 1E and 2E).  The ALJ found, after considering the evidence in the record, that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms.  (Tr. 19).  However, the ALJ found the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible.  (Tr. 19).

The Plaintiff is claiming that the ALJ improperly applied the Holt Pain Standard, thus improperly discounting Plaintiff's testimony regarding his subjective complaints.  (Doc.

18

#15).This Court finds the ALJ properly applied the Holt Pain Standard, and considered all pertinent and relevant evidence necessary to make his appropriate findings.   Thus, each individual claim by Plaintiff will be denied.

The Plaintiff claims the ALJ failed "to articulate adequate reasons for discrediting pain testimony."(Doc. #15 at 14).Specifically, the Plaintiff asserts that the ALJ discredited his testimony only because it was inconsistent with objective medical evidence. Plaintiff asserts this requires that, as a matter of law, all statements by Plaintiff must be accepted as true.  The Court disagrees; the ALJ fully and adequately gave reasons for discrediting pain testimony. Additionally, the ALJ did not discredit the Plaintiff's testimony solely because it was inconsistent with objective medical evidence, but considered Plaintiffs statements, history, medical statements, and consulting physicians.  The ALJ articulated that intensity, persistence and limiting effects of the symptoms were inconsistent with the residual functional capacity assessment for numerous reasons.

The incident that created all of the claimed impairments and their symptoms came from the Plaintiff being thrown from a car in 2004.  The Plaintiff suffered bilateral brain contusions. The ALJ noted, from October 2004 through 2006 the Plaintiff was able to work and maintain gainful employment working as a waiter.  The ALJ also noted that the history of brain injury did not prevent the Plaintiff from working before the onset date, and no evidence was presented to show why he is unable to work after the onset date.  (Tr. 19).  The above work was all performed after the Plaintiff's treating physician cleared him for work following his head injury.

The Plaintiff reported symptoms of depression, panic attacks, symptoms of attention deficit hyperactivity disorder (ADHD), and memory loss.  The ALJ noted that intellectual capacity test results indicated the Plaintiff was functioning in the "average" or "normal" ranges.

This included a full IQ score of 103.  The Plaintiff also tested in the "average" range for attention and concentration.  (Tr. 266).As noted above, the psychological testing led to the conclusions that the Plaintiff was functioning normally, with the exception of the immediate and delayed verbal recall which fell within the "low average" and "borderline impaired" range.  (Tr. 20); (Exhibit 3F).  Based on his findings, the psychologist concluded that the Plaintiff could perform basic work but would require additional instruction to improve recall.  (Tr. 271).  Specifically, the psychologist stated the Plaintiff does not "meet criteria" for an ADHD diagnosis.  (Tr. 267)

The Plaintiff did not assert any physical limitations to performing past relevant work.  This was noted by Dr. Ragovin, who examined the claimant on July 11, 2007 at the request of the state agency.  This is supported by the Physical Residual Functional Capacity Assessments performed by Dr. Andriole (Tr. 289–96), as well as by Dr. Carter. (Tr. 297–303).

The ALJ also considered non-medical factors when evaluating the Plaintiff's credibility.  The ALJ noted, "Despite his alleged severe mental impairment, [Plaintiff] has lived by himself." (Tr. 21).The ALJ found that had the symptoms been as severe as claimed, the Plaintiff would not be able to function on his own.  The Plaintiff was also able to care for himself on a daily basis, including: caring for personal needs, prepared own meals, shopping on his own, did household chores without need for encouragement, socialized with others, and saw his child whenever possible.  (Tr. 18, 21, 139–47).  These activities do not indicate the disabling symptoms and limitations the Plaintiff alleges.

The Plaintiff alleges it was improper for the ALJ to consider his daily activities in assessing the credibility of his allegation of disabling limitations.  This Court disagrees, noting that the Plaintiff's activities may show that the symptoms are not as limiting as alleged.  See 20 C.F.R. § 404.1529(c)(3)(i).  The ALJ did not solely rely on Plaintiff's daily activities in deciding

his claim, nor did the ALJ find Plaintiff's activities to be dispositive evidence of his ability to work.  The ALJ merely considered the Plaintiff's daily activities as one of many factors when addressing the Plaintiff's credibility.

The ALJ, contrary to Plaintiff's claim, also properly considered Plaintiff's appearance and demeanor at the hearing, noting the Plaintiff showed good attention and concentration at the hearing.(Tr. 21).   The ALJ also noted the Plaintiff has a good memory and answered all questions without hesitation.   (Tr. 21).   The ALJ is not prohibited "from considering the claimant's appearance and demeanor during the hearing."  Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987) (quoting Norris v. Heckler, 760 F.2d 1154, 1158 (11th Cir. 1985)).   The regulations also allow the ALJ to consider his observations of the claimant in assessing the credibility of the claimant's allegations.  20 C.F.R. §§ 404.1529(c)(3)(vii), 416.929(c)(3)(vii).

Finally, the ALJ considered the Plaintiffs drug and alcohol use, as well as his criminal history, as factors to his credibility.  Specifically, the ALJ noted that the Plaintiff testified, at his hearing, that he had not drank alcohol for three or four months, but on July 17, 2008 (less than one month prior to the hearing) he admitted that he "occasionally drinks alcohol with last one being last night."  (Tr. 407).  In addition, the Plaintiff was found unconscious on July 16, 2008 from what was determined to be a drug overdose.  (Exhibit 17F).  The Plaintiff, at the hearing, indicated the overdose was due to alcohol, Xanax and Oxycodone, and also admitted to a history of alcohol and drug abuse. (Tr. 36).  The ALJ also noted the Plaintiff has a significant criminal history:

> He was arrested in August 2007 for battery, in January 2008 for failure to appear in court, in March 2008 for burglary with assault and in April 2008 for drunk and disorderly.  In July 2008 he was on probation (Exhibit 18F, page 4).  He was "pistol whipped during a bad drug deal in 2004" (Exhibit 19F).  He has served jail time in the past.

(Tr. 21).

The Plaintiff failed to provide sufficient evidence to support his claims of disabling symptoms and limitations.  This Court finds substantial evidence supports the ALJ's findings as they apply to the Plaintiff's credibility.   As a whole, substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled within the meaning of the Social Security Act.

Accordingly it is hereby

**ORDERED:**

The Decision of the Commissioner is hereby **AFFIRMED**.   The Clerk of the Court is hereby directed to issue a judgment consistent with this ruling and to thereafter close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this  _7th___  day of December, 2010.


SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE


Copies:
Counsel of record, MJCD